UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | Case No. 2:15-cr-20045-SLD |
| | ) | |
| KELTON SNYDER, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

## ORDER

Before the Court are Defendant-Petitioner Kelton Snyder's *pro se* Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se
2255 Motion"), ECF No. 97, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255
("Counseled 2255 Motion"), ECF No. 100, and counseled motion for a status conference, ECF
No. 104.  For the reasons that follow, the § 2255 motions are DENIED, and the motion for a
status conference is MOOT.

## BACKGROUND

### I.    Pretrial, Plea, and Trial Proceedings

On July 15, 2015, a criminal complaint was filed charging Snyder with conspiracy to
commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) and using a firearm in
furtherance of a crime of violence in violation of 18 U.S.C. § 924(c) and (j).  Compl. 1, ECF No.
1.  Assistant Federal Public Defender Elisabeth Pollock was appointed to represent Snyder.  *See*
July 16, 2015 Min. Entry.  He was later indicted by a grand jury[1] on five counts: Hobbs Act

---

[1] There was an initial indictment charging Snyder with: conspiracy to commit Hobbs Act robbery (count one);
Hobbs Act robbery (count two); brandishing, carrying, and using a firearm during a crime of violence, that is, the
Hobbs Act robbery charged in count two (count three); possession of a firearm by a felon in violation of 18 U.S.C.
§ 922(g) (count four); and murdering Paige Mars during and in relation to a crime of violence (count five).
Indictment 1–7, ECF No. 7.

robbery (count one); brandishing a firearm during a crime of violence (the robbery charged in

count one) in violation of 18 U.S.C. § 924(c) (count two); possession of a firearm by a felon in

violation of 18 U.S.C. § 922(g) (count three); conspiracy to kill a witness in violation of 18

U.S.C. § 1512(a)(1) and (k) (count four); and murdering Paige Mars during and in relation to a

crime of violence (the conspiracy to kill a witness as charged in count four) (count five). *See*

Superseding Indictment 1–5, ECF No. 15.

A short recitation of the facts is warranted here. Snyder, Matthew Higgins-Vogt, and

Mars agreed to rob a Circle K convenience store in Decatur, Illinois. Presentence Investigation

Report ("PSR") ¶ 16, ECF No. 65. Mars would act as the getaway driver. *Id.* On April 3, 2015,

they carried out the robbery. *Id.* ¶ 17. Snyder held a shotgun to the cashier's back. *Id.* ¶¶ 17, 19.

Snyder and Higgins-Vogt ordered the cashier and a customer to the ground, tied them up, and

took their wallets. *Id.* ¶¶ 17–19. Snyder and Higgins-Vogt stole liquor and approximately $700

from the Circle K. *Id.* ¶ 17. After the robbery, Snyder and Mars expressed romantic interest in

each other. *Id.* ¶ 25. Mars's family advised her not to become involved with Snyder, alleging

that Snyder had been physically abusive to other women he dated. *See id.* Mars brought this up

to Snyder and the two had a falling out. *Id.* Snyder then became concerned that Mars would

inform law enforcement about the robbery. *See id.* ¶ 27. He went to Higgins-Vogt's house. *See*

*id.* ¶¶ 28–29. They came to an understanding that Mars would be killed and that Higgins-Vogt

would be the one to kill her due to Snyder's recent argument with Mars. *Id.* ¶¶ 29–30. Higgins-

Vogt asked Mars to pick him up on the pretense that he needed to dispose of the shotgun used in

the robbery. *Id.* ¶ 31. They went to a river, and Higgins-Vogt shot and killed Mars with the

shotgun used in the robbery. *Id.* ¶¶ 31–36.

Snyder moved to dismiss counts two and five of the superseding indictment. Mot. Dismiss, ECF No. 20. Both counts had as an element that Snyder committed a crime of violence as defined by 18 U.S.C. § 924(c)(3). *See id.* at 3. The indictment alleged as the predicate crime of violence for count two a Hobbs Act robbery (as charged in count one). Superseding Indictment 2. It alleged as the predicate crime of violence for count five conspiracy to kill a witness (as charged in count four). *Id.* at 5. Snyder argued that counts two and five should be dismissed because neither alleged predicate offense qualified as a crime of violence. *Id.* at 11. The Government opposed the motion as it related to count two but agreed to dismiss count five. Resp. Mot. Dismiss 1, ECF No. 23. United States District Judge Colin Bruce, who was then presiding over the case, granted the request to dismiss count five but denied the request to dismiss count two. *See, e.g.*, Dec. 7, 2015 Order 2, ECF No. 24. Snyder had argued that Hobbs Act robbery did not have as an element the use or threatened use of force, *see id.* at 4, but Judge Bruce disagreed, *id.* at 6–7.

On March 7, 2016, Snyder pleaded guilty to counts one, two, and three of the superseding indictment and proceeded to trial on count four. *See* Mar. 7, 2016 Min. Entry. In preparation for the trial, Snyder moved *in limine* to exclude: statements by co-conspirator Higgins-Vogt; photographs of the murder scene and Mars's body; evidence that police officers found books on serial killers at Snyder's mother's house; evidence that Snyder was engaging in sexual acts with his incarcerated brother's girlfriend on the night Mars was murdered; and evidence of Snyder's criminal history  Mots. Limine 1–6, ECF No. 26. In light of the Government's indication that the parties could agree on certain questions and that it did not intend to introduce some evidence, Judge Bruce found four of Snyder's requests moot. *See* Mar. 10, 2016 Order 1, ECF No. 29. The only controverted request related to photographs of the murder scene and Mars's body. *Id.*

at 2.  Judge Bruce found that because Snyder was charged with conspiracy to kill a witness, which would require the Government to prove the death of a person, photographs of the scene and witness were relevant.  *Id.* at 2–3.  Snyder argued that because he would stipulate that a death occurred, they were unnecessary.  *Id.*  But Judge Bruce held that such a stipulation would not make the photographs irrelevant and that "as long as the [G]overnment stay[ed] within reasonable limits and only produce[d] enough photographs to establish its case against [Snyder], their admission w[ould] not result in unfair prejudice."  *Id.* at 3–4.  Snyder then filed another set of motions *in limine*.  Suppl. Mot. Limine, ECF No. 37.  He sought exclusion of cumulative evidence of the robbery he pleaded guilty to and exclusion of evidence of Mars's character.  *Id.* at 1–4.  Judge Bruce ruled that "as long as the [G]overnment stay[ed] within reasonable limits and only produce[d] enough evidence to establish its case . . . such evidence w[ould] not result in unfair prejudice and w[ould] allow the Government to present a continuous story to the jury."  Apr. 1, 2016 Order 2, ECF No. 43.  But he noted that if the "Government's evidence bec[a]me cumulative during the trial," he would address the issue again.  *Id.* at 3.  He found the second request moot because the Government did not intend to solicit evidence about Mars's character.  *Id.*

The jury trial on count four—conspiracy to kill a witness—began on April 5, 2016.  Apr. 5, 2016 Min. Entry.  Assistant Federal Public Defender Peter Henderson served as Pollock's co-counsel.  *Id.*  Evidence was heard over the course of four days.  *See id.*; Apr. 6, 2016 Min. Entry; Apr. 7, 2016 Min. Entry; Apr. 11, 2016 Min. Entry.  The jury found Snyder guilty on April 12, 2016.  Apr. 12, 2016 Min. Entry; Jury Verdict, ECF No. 57.

## II.   Sentencing

The United States Probation Office ("USPO") prepared a PSR in advance of sentencing. For count one, Hobbs Act robbery, USPO listed the adjusted offense level as 28 based on a base offense level of 20 and enhancements for use of a firearm and physically restraining the cashier and customer.  PSR ¶¶ 41–47.  For count three, felon in possession of a firearm, USPO listed the adjusted offense level as 45; it used the base offense level for premeditated murder because the possession of the firearm was in connection with the commission of a murder and added two levels because Snyder was an organizer, leader, manager, or supervisor.  *Id.* ¶¶ 49–54.  For count four, conspiracy to kill a witness, USPO listed the adjusted offense level as 45 based on the same calculations as count three.  *Id.* ¶¶ 55–60.  Count two carried a minimum seven-year term of imprisonment that was required by statute to be imposed consecutively to any other term of imprisonment, so there was no offense level.  *See id.* ¶¶ 48, 130; 18 U.S.C. § 924(c)(1)(A)(ii). USPO listed Snyder's adjusted offense level (after combining counts one, three, and four) as 47 but his total offense level as 43 because that is considered the highest offense level under the Sentencing Guidelines.  *Id.* ¶¶ 64, 67.  With a criminal history category of IV, *id.* ¶ 72, Snyder's Guidelines range for imprisonment would be life for counts one, three, and four, *id.* ¶ 130. However, count one was subject to a twenty-year statutory maximum term of imprisonment and count three was subject to a ten-year statutory maximum term of imprisonment; those statutory maximums became the Guidelines ranges for counts one and three.  *Id.* ¶¶ 128, 130.  Count four carried a mandatory term of life imprisonment pursuant to statute.  *Id.* ¶ 128 (citing 18 U.S.C. § 1512(a)(1) and 18 U.S.C. § 1111).  The Guidelines range for count two was the seven-year mandatory minimum.  *Id.* ¶ 130.

Snyder made three objections to the PSR. *Id.* at 24–27. First, he contended he should receive offense-level reductions for acceptance of responsibility since he pleaded guilty to counts one, two, and three and he proceeded to trial primarily to preserve a legal argument. *See id.* at 24. Second, he contended that his offense level for his felon-in-possession charge should not have been based on the homicide Guideline. *Id.* at 25. And third, he objected to being assessed two-level enhancements for being a leader or organizer in counts three and four. *Id.* at 27.

The sentencing hearing was held on October 24, 2016. Sentencing Hr'g Tr. 1, ECF No. 89. Judge Bruce overruled Snyder's first objection, finding that Snyder had, in addition to making a legal argument against his guilt on count four, made a factual argument that Higgins-Vogt acted by himself in killing Mars. *See, e.g.*, *id.* at 10:5–15. Judge Bruce overruled Snyder's second objection as well, finding that the possession of the firearm was part of the same scheme or plan as the murder. *Id.* at 13:10–14:21. He also overruled the third objection, finding that the jury necessarily found that "Snyder was the instigator of the decision to kill Paige Mars." *Id.* at 16:25–17:12.

Judge Bruce then adopted the findings of the PSR and stated the Guidelines ranges for imprisonment as follows: 240 months on count one, 84 months on count two consecutive to all other counts, 120 months on count three, and life imprisonment on count four. *Id.* at 35:5–36:13. The Government recommended the statutory maximum sentence on each count—twenty years on count one, life on count two, ten years on count three, and life on count four. *Id.* at 38:19–39:2. Snyder disagreed that he should receive a life sentence on count two, for brandishing a firearm during the Circle K robbery, arguing that it was not appropriate to sentence him on that count for the murder conspiracy conduct that was the subject of count four. *Id.* at 50:22–51:8. He argued that count two was related to the armed robbery, not the murder. *Id.* at 51:15–19. He

suggested that the Government was asking for a life sentence on count two because it was "nervous" that an appeal on count four would be successful. *See id.* at 41:22–42:2. In other words, Snyder suggested that the Government wanted a life sentence on count two to protect against the possibility that his conviction on count four, which carried a mandatory life sentence, would be vacated.

Judge Bruce then proceeded to explain his sentence and rationale. He indicated that he was not considering the potential impact of an appeal. *Id.* at 57:8–12. He stated that he was considering the factors listed in 18 U.S.C. § 3553(a), *id.* at 59:12–13, and noted that this case "involve[d] extremely dangerous conduct, extremely callous conduct and . . . a cold-blooded murder, basically an execution," *id.* at 60:22–25. He also noted that Snyder was "a person who has a great deal of anger and hate," was "extremely violent," and had "very little regard for human life." *Id.* at 61:5–13. With respect to the robbery, Judge Bruce stated that it "was conduct by a dangerous man that could have easily resulted in multiple violent deaths . . . if things had turned out differently." *Id.* at 62:11–14. He noted that when Snyder "thought he would be discovered as the culprit [of the robbery] . . . he was involved in having Paige Mars executed, killed, shot multiple times with a shotgun." *Id.* at 62:18–23; *id.* at 63:12–14 ("[H]e arranged for Matthew Higgins-Vogt to kill Paige Mars to silence her so that she couldn't turn the two of them in as being involved in that robbery."). However, Judge Bruce also noted that Snyder "had one of the worst upbringings [he] ha[d] seen in many, many years." *Id.* at 63:20–22. Judge Bruce thought Snyder was likely to commit violent crimes in the future because "if things don't go his way, he reacts with extreme violence." *Id.* at 64:11–13. And he thought it unrealistic that Snyder could be rehabilitated in a "way that would make society safe" given his age and history. *Id.* at 64:14–25. Based on these considerations, Judge Bruce sentenced Snyder

to 240 months of imprisonment on count one, 120 months of imprisonment on count three, and life imprisonment on count four, all to be served concurrently, and life imprisonment on count two to be served consecutively to the other counts. *Id.* at 66:5–11. He imposed a five-year term of supervised release "[i]f by chance" Snyder were to be released from custody. *Id.* at 66:14–18. Judgment was entered on October 26, 2016. Judgment 1, ECF No. 70.

## III.   Appeal

Snyder timely appealed. Not. Appeal, ECF No. 73. The Federal Public Defender's office ("FPD") withdrew, and Snyder was appointed new counsel. *See* Dec. 8, 2016 Seventh Circuit Order, ECF No. 84. He argued that "the [G]overnment's evidence was insufficient to prove" that if Mars "had not been murdered, she was reasonably likely to have communicated with a *federal* law enforcement officer about the robbery," as required to convict him for conspiracy to kill a witness under 18 U.S.C. § 1512. *United States v. Snyder*, 865 F.3d 490, 493 (7th Cir. 2017). "Snyder also challenge[d] the district court's sentencing guideline calculations, and . . . dispute[d] the substantive reasonableness of [the] life sentence on the § 924(c) charge" in count two. *Id.*

The Seventh Circuit issued its decision on the appeal on July 25, 2017. *Id.* at 490. It agreed with Snyder's first argument and vacated his conviction on count four. *Id.* at 493. The Supreme Court had held that to convict a defendant under § 1512, the government must prove a federal nexus, that is, that there was a reasonable likelihood that had the victim communicated with law enforcement, at least one communication would have been with federal law enforcement. *Id.* at 496 (citing *Fowler v. United States*, 563 U.S. 668 (2011)). Typically, this is established either by showing that the underlying crime would have been prosecuted in federal court (in which case it is "reasonably likely that the witness would have spoken with a federal

officer during the course of that prosecution") or by showing "a reasonable likelihood that the victim would have communicated with a federal officer who was assisting the state prosecution of the underlying crime." *Id.* at 497.  The Seventh Circuit found the evidence lacking for both paths to establishing the required federal nexus. *Id.* at 497–98.  The mere fact that Snyder's crimes amounted to federal offenses was insufficient to show that they would have been prosecuted in federal court. *Id.*  Moreover, there was merely evidence that the Federal Bureau of Investigation provided technical support to local law enforcement in this case, but "evidence of . . . technical assistance does not show a reasonable likelihood that [an] eyewitness . . . would have communicated with a federal officer." *Id.* at 498.

The Seventh Circuit "otherwise affirm[ed] Snyder's sentence, including the life sentence on the § 924(c) charge." *Id.* at 493. Though Snyder challenged Judge Bruce's Guidelines calculations, the Seventh Circuit concluded it "need not address" those challenges "because even if there had been a guideline error, it would have been harmless" because Judge Bruce "expressly based [his] decision on the § 3553(a) sentencing factors." *Id.* at 500.  Moreover, the Seventh Circuit concluded that it was not substantively unreasonable to impose a life sentence under § 924(c) in this case.  *See id.* at 502.  The court noted that Judge Bruce found that Snyder instigated the decision to kill Mars and, accordingly, "it was appropriate to consider this during sentencing" and "[i]t may well have been an abuse of discretion not to do so." *Id.*  The court also noted that the lack of a federal nexus on the witness conspiracy claim took "nothing away from the horror and brutality of the murder," "Snyder's active involvement in plotting that crime, or the connection between the murder and the federal offenses to which [Snyder] pled guilty." *Id.* at 501.

### IV.    2255 Proceedings

In August 2018, Snyder filed a motion for an extension of time to file a § 2255 motion.

Mot. Extension Time, ECF No. 94.  Judge James E. Shadid, who was then chief judge of the

Central District of Illinois, denied the motion, explaining that the motion was premature and

could not be accepted as a § 2255 itself because it did not identify what claims Snyder sought to

bring.  Aug. 22, 2018 Text Only Order.  Judge Shadid indicated that Snyder should either ensure

a motion under § 2255 was filed within the limitations period set forth in § 2255(f) or explain in

his § 2255 motion why the limitations period should be equitably tolled.  *Id.*

The case was subsequently reassigned to this Court.  Apr. 22, 2019 Text Only Order

Reassigning Case.  Snyder filed a motion requesting counsel, ECF No. 96, but the Court denied

the motion because there was nothing pending that would warrant appointment of counsel, May

20, 2019 Text Order.

Finally, in May 2020, Snyder filed the Pro Se 2255 Motion.  Pro Se 2255 Mot. 12.[2]  He

raises the following claims: first, that Judge Bruce was biased against him resulting in violation

of his due process rights; second, that his § 924(c) conviction should be vacated; and third, that

his appellate counsel was ineffective for failing to seek supreme court review.  *Id.* at 4–7.  The

first claim is based on *ex parte* communications between Judge Bruce and the United States

Attorney's Office for the Central District of Illinois ("USAO") that came to light in 2018.  *See*

*United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of

the discovery and disclosure of the communications)

The Court appointed counsel to represent Snyder with respect to the Pro Se 2255 Motion.

May 20, 2020 Text Order.  On October 6, 2020, counsel filed the Counseled 2255 Motion,

---

[2] The Court uses the page numbers generated by CM/ECF because the Pro Se 2255 Motion is not consistently paginated.

"which is intended to supplement" the Pro Se 2255 Motion.  Counseled 2255 Mot. 1–2.  Through

this motion, however, Snyder explicitly withdrew the third claim—ineffective assistance of

appellate counsel—included in the Pro Se 2255 Motion, so the Court considers that claim no

further.  *Id.* at 2.  The Counseled 2255 Motion reasserts a due process claim based on Judge

Bruce's communications and adds two additional claims: that Judge Bruce was required to

recuse himself under 28 U.S.C. § 455(a) and that the FPD provided Snyder ineffective assistance

of counsel in violation of the Sixth Amendment.  *Id.* at 15, 26–27.

The Government filed its response on March 29, 2021.  Resp. 1, ECF No. 103.  It argues

that Snyder cannot establish that Judge Bruce was biased against him, that the § 455(a) claim "is

not a proper basis for relief in a § 2255 proceeding," that Snyder procedurally defaulted the

§ 455(a) claim, that the § 455(a) claim is untimely, and that the ineffective assistance of counsel

claims do not warrant relief.  *Id.* at 28–29.  It also briefly argues that Snyder defaulted any claim

that Hobbs Act robbery is not a crime of violence, *id.* at 49 n.10, and that Hobbs Act robbery

does qualify as a crime of violence so Snyder's § 924(c) conviction should stand, *see id.* at 42

n.8.

No reply was filed, though Snyder later filed a motion for a status conference.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set

aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy

because it asks the district court essentially to reopen the criminal process to a person who

already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in

violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

## II.    Analysis

The Court addresses each of Snyder's claims separately along with any defenses specific to those claims.

### A.  Due Process

The due process claim is based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, over a year after Snyder's appeal was resolved. These communications have been detailed and summarized elsewhere. *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).  Snyder argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights.  *See* Counseled 2255 Mot. 15.

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here. In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the communications "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Snyder relies on the same communications that were relied on in *Williams* and considered by the Special Committee, and he points to no emails that concern his case specifically. *See* Counseled 2255 Mot. 7–19.

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86. In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87. Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte*

communications and the comments.  *See id.* at 884 (declining to resolve the constitutional issue

and instead remanding for resentencing under the court's supervisory authority).  Snyder points

to no similar comment at sentencing that would lend itself to a finding that Judge Bruce was

biased against him.  Instead, he is relying on the communications alone.  *See* Counseled 2255

Mot. 17–18.[3]  The Court thus finds that Snyder has failed to show either actual bias or a risk of

bias so high that it violates due process.

### B.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which

his impartiality might reasonably be questioned."  The Government does not address whether

Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should

have recused himself from Snyder's case under § 455(a).[4]  It does argue, however, that this

statutory claim is procedurally defaulted, untimely, and not cognizable under § 2255.  *E.g.*, Resp.

42–54.

#### 1.  Procedural Default

"A claim cannot be raised for the first time in a § 2255 motion *if it could have been* raised

at trial or on direct appeal."  *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016)

(emphasis added).  The Government argues that Snyder procedurally defaulted his § 455(a)

---

[3] Snyder does briefly argue that the life sentence on the § 924(c) charge "strongly suggests" bias.  Counseled 2255 Mot. 1.  The Court doubts that a long sentence itself—made based on judgments about the nature of the crime a defendant committed and the defendant's likelihood of recidivism—could be evidence that a judge was unconstitutionally biased against a defendant.  *Cf. Liteky v. United States*, 510 U.S. 540, 550–51 (1994) (explaining that a judge is not "recusable for bias or prejudice" when a judge becomes "ill disposed" to a defendant after presiding over his trial when "his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings").  Moreover, the sentence was affirmed as substantively reasonable on appeal.  *See Snyder*, 865 F.3d at 502.  (And the Seventh Circuit suggested it would have been unreasonable *not* to sentence Snyder for his role in Mars's murder.  *See id.*)

[4] To the Court's knowledge, the Government has conceded an appearance of bias—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so far.  *See, e.g., Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th Cir. 2020).

appearance of bias claim by failing to raise it on appeal.  Resp. 48.  Anticipating an argument

that "the *ex parte* emails had not been revealed at the time and therefore [Snyder] could not have

raised such a claim in an appeal," the Government argues that "the emails had nothing to do with

[Snyder's] case" and that Snyder "cannot excuse his own procedural failure by belatedly

asserting misconduct in unrelated cases to bolster a claim he chose not to make."  *Id.* at 48–49.

But the Government provides no case law support for its argument that Snyder cannot rely on

these communications, which became public after his appeal was resolved, to excuse his default.

Instead, it appears to be making an argument that the communications do not support Snyder's

claim.  But that is better considered as an argument on the merits.  The Court does not find that

Snyder procedurally defaulted this claim.

### 2.  Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking

to vacate his sentence under § 2255 has one year to do so, from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Snyder acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute

of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable

tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve his right to raise a claim based on Judge Bruce's failure to recuse from his case.  Counseled 2255 Mot. 3–4.[5]  The Government responds that Snyder is not entitled to equitable tolling because there is "no evidence showing that he exercised diligence in preserving the appearance of bias claim."  Resp. 54.

The time limits set forth in § 2255(f) are subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255).  A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649 (quotation marks omitted).  "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000).  "A petitioner bears the burden of establishing both elements of the *Holland* test;

_____

[5] The Court cannot ascertain whether Snyder contends his motion is timely under § 2255(f)(2), (3), or (4).  He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4).  Counseled 2255 Mot. 3.  But he makes no argument that any of these provisions apply.  Instead, he goes on to argue for equitable tolling, *id.* at 3–4, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)).  In any case, the Court finds that Snyder's § 455(a) claim is not timely under § 2255(f)(2), (3), or (4).  Because Snyder does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply.  And because the § 455(a) claim does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply.  The Government argues that even if § 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Snyder could have learned of Judge Bruce's improper communications.  Resp. 51.  The Court agrees, though it declines to find on the record before it that Snyder should have been aware of the communications in October 2018 when a motion for a new trial based on the communications was filed in a different case, as the Government argues, *see id.*  The Government provided a letter from Patton to Snyder dated November 6, 2018 informing him of the communications.  *See* Patton Letter, Resp. Ex. B, ECF No. 103-2 at 3–4.  It also provided a letter from Snyder to Patton dated November 12, 2018 which indicates that Snyder received the motion for a new trial from the other case (though it suggests Snyder may not have received the November 6, 2018 letter from Patton).  Snyder Letter, Resp. Ex. B, ECF No. 103-2 at 6.  The letter from Snyder to Patton demonstrates that Snyder was aware of the communications by November 12, 2018, but his Pro Se 2255 Motion was not filed until May 2020, more than a year later.

failure to show either element will disqualify him from eligibility for tolling." *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Here, Snyder barely develops an argument that he has met both elements of the *Holland* test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse. *See* Counseled 2255 Mot. 4 (quotation marks omitted). Snyder does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case. In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters." *Id.* at 652. The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief." *Id.* at 653–54. Snyder points to no facts— and cites no further cases—to support his argument that Patton's legal mistake would go beyond mere negligence and support a finding of extraordinary circumstances warranting equitable

tolling.  *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal advice generally does not by itself trigger equitable tolling.").  Moreover, Snyder merely states in a conclusory fashion that he "diligently filed his pro se filing upon learning of the mistake." Counseled 2255 Mot. 4.  But "mere conclusory allegations of diligence are insufficient." *Mayberry*, 904 F.3d at 531.

The Court concludes that Snyder has failed to establish his entitlement to equitable tolling, so it finds his § 455(a) claim untimely.

### 3.  Cognizability

Even if Snyder's § 455(a) claim were not untimely, however, it would not warrant relief. Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the language of § 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the "laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can be raised on a § 2255 motion."  *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and whether it presents exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."  *Id.* (quotation marks and alterations omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the federal law violation qualifies as "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[6]

---

[6] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[7]  In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id*. (quotation marks omitted).  It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.*  It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.*  And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[8]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality."  It made this assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988).  *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under

---

[7] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[8] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear.  The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [v. *Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted).  The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255.").  It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82.  The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

§ 455(a).  *Liljeberg*, 486 U.S. at 858, 863.  Rule 60(b)(6) allows district courts to grant relief

from a final civil judgment in "extraordinary circumstances."  *Id.* at 863–64 (quotation marks

omitted).  The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it
> is appropriate to consider the risk of injustice to the parties in the particular case,
> the risk that the denial of relief will produce injustice in other cases, and the risk of
> undermining the public's confidence in the judicial process.

*Id.* at 864.  The Second Circuit in Hardy noted initially that it "doubt[ed] that an *appearance* of

impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental

defect' that would justify vacating an otherwise lawful sentence under section 2255."  *Hardy*,

878 F.2d at 97.  It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would

similarly hold that a criminal judgment may be collaterally attacked based on an appearance of

impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption

that it would "for purposes of [that] appeal."  *Id.*  The only dispositive holding from the Second

Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255

because she was aware of the basis for the judge's recusal when direct appeal was available.  *Id.*

at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255

review, but only if it meets the standard laid out in *Davis*.  Under that standard, the alleged

§ 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage

of justice" and "present[] exceptional circumstances where the need for the remedy afforded by

the writ of habeas corpus is apparent."  *Davis*, 417 U.S. at 346 (quotation marks omitted).  The

alleged error here does not rise to that level.  As noted above, Snyder has not established a due

process violation and has no evidence that any of Judge Bruce's communications or relationships

with the USAO impacted his proceedings or prejudiced him. *Cf. Bachner v. United States*, 517

F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical possibility that a complete

miscarriage of justice might have occurred is not enough to satisfy the Davis test, when in fact no

injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state court's failure to comply

with the Interstate Agreement on Detainers was not cognizable on § 2254 review where the

defendant did not object and no prejudice resulted because the case "lack[ed] aggravating

circumstances rendering the need for the remedy afforded by the writ of habeas corpus . . .

apparent" (second alteration in original) (quotation marks omitted))).  Though he argues that

Judge Bruce made discretionary decisions which impacted his case—denying his request to

dismiss count two, denying his motion *in limine* to exclude photographs of the murder, ruling

against him on two trial objections, and sentencing him to a life sentence on count two,

Counseled 2255 Mot. 4–6—he makes no argument that the appearance of bias impacted these

decisions.[9]  Moreover, any violation of § 455(a) would have no bearing on Snyder's guilt or

---

[9] Additionally, Snyder fails to elaborate on why these were close discretionary calls or particularly prejudicial to him, to the extent that might show the appearance of bias impacted these decisions. *Cf. Orr*, 969 F.3d at 739–41 (considering whether Judge Bruce made close discretionary calls that were prejudicial in determining whether his failure to recuse was harmless error).  First, he does not cite any case law to support his argument that Judge Bruce's ruling on the motion to dismiss—that Hobbs Act robbery is a predicate crime of violence for § 924(c)—was even a discretionary call. *See* Counseled 2255 Mot. 4–5.  This ruling has proved to be legally correct.  After the motion to dismiss was decided, the Seventh Circuit held that Hobbs Act robbery was a predicate crime of violence for § 924(c). *See United States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 126 (mem.) (2017).  And it has reiterated this holding as recently as March 2023. *See United States v. Worthen*, 60 F.4th 1066, 1068–69 (7th Cir. 2023).  The next allegedly discretionary calls are evidentiary rulings: Judge Bruce's ruling on a motion *in limine* and rulings on two objections at trial. *See* Counseled 2255 Mot. 5–6.  Though the Seventh Circuit reversed the jury's verdict from the trial, Judge Bruce relied on the jury's verdict at sentencing to find that Mars's murder was part of a continuous scheme with the remaining offense conduct and that Snyder was the instigator of the murder, so perhaps these evidentiary rulings remain relevant.  But, again, Snyder fails to explain why they were close discretionary calls or show that they were prejudicial to him.  Judge Bruce's ruling on the motion *in limine* allowing the Government to introduce pictures of Mars's body and the crime scene at trial was well supported with case law standing for the proposition that the government can still present evidence to prove a fact even if the defendant attempts to stipulate to it. *See* Mar. 10, 2016 Order 3–4.  And Snyder does not elaborate on how many or what kind of crime scene pictures were introduced at trial such that it is not clear this ruling was even prejudicial to him.  With respect to trial objections, Snyder highlights only two objections that were decided against him, *see* Counseled 2255 Mot. 5–6, but it is not clear these were particularly discretionary or prejudicial.  First, he highlights an objection to speculation that was overruled. *See id.* at 5–6.  Rachel Funk testified at trial that on the evening of April 3, 2015, she went to Brian Carter's house.  Trial Tr. Vol. I 85:13–21, ECF No. 80.  She testified that she brought Amy Ward with her, *id.* at 86:5–6, and that she also invited Mars to come over, *id.* at 87:8–9.  Funk testified that Mars arrived with Snyder, Higgins-Vogt, and another individual at around 11. *Id.* at 87:10–17.  The Government asked Funk what she did when they arrived. *Id.* at 87:23.  Funk responded that she

innocence.  *See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a

§ 2254 "petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id]

not meet the required 'complete miscarriage of justice' standard required of nonconstitutional

violations of federal law in order to be cognizable under the federal habeas corpus statute,"

noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic

justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation

marks omitted)).

 The Court does not find that *Liljeberg* requires a different result.  *Liljeberg* identified

three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6)

due to extraordinary circumstances.  *See Liljeberg*, 486 U.S. at 858.  And in *Atwood*, 941 F.3d at

---

"was behind a tree because they were mad . . . that someone else was there."  *Id.* at 87:24–25.  Snyder objected for
lack of foundation.  *See id.* at 88:1.  Judge Bruce sustained the objection "on the grounds that [he] d[id]n't
understand the question or the answer" and asked the Government to rephrase.  *Id.* at 88:2–5.  The Government then
asked Funk, "What happened when they arrived?"  *Id.* at 88:9.  She responded, "Me, Paige and Amy were behind a
tree because they were mad at some girl that was there."  *Id.* at 88:10–11.  Snyder objected that the answer was
speculation and to lack of foundation, *id.* at 88:12–13, and Judge Bruce overruled the objection, *id.* at 88:14–15.
This was correct.  Funk was not speculating about what someone else was thinking; she was testifying about her
knowledge of why she stood behind a tree.  In any case, Snyder does not even attempt to explain why this ruling was
prejudicial to him.  The Court fails to see how this testimony impacted the jury's verdict at all.  Second, Snyder
highlights a time when Judge Bruce sustained the Government's objection that one of his questions was irrelevant.
*See* Counseled 2255 Mot. 6.  He explains that his attorney asked a police officer whether he thought of a gas station
robbery where $700 was taken as a federal case.  *Id.*  The Government objected, and Judge Bruce sustained because
the answer was irrelevant.  *Id.*  Snyder complains that this "went straight to [his] theory of defense."  *Id.*  But a
police officer's subjective belief as to whether a crime was a federal crime likely was irrelevant.  The required
federal nexus could be shown by evidence that the robbery would be prosecuted in federal court or by evidence that
it was reasonably likely Mars would have communicated with a federal officer assisting local police.  *See Snyder*,
865 F.3d at 497.  An officer's subjective belief is not evidence of either.  In any case, neither Judge Bruce nor the
Seventh Circuit thought this was a crime likely to be prosecuted in federal court, *id.* at 498, and this evidence was
only relevant to the conviction that was vacated by the Seventh Circuit.  The Court fails to see how not allowing this
testimony was particularly prejudicial to Snyder.  Moreover, Snyder fails to mention many other objections that
were decided in his favor at trial.  *See* Trial Tr. Vol. I 87:24–88:5 (sustained defense objection to foundation); Trial
Tr. Vol. II 196:11–22, ECF No. 81 (sustained two defense objections to relevance); *id.* at 242:14–23 (sustained
objection to hearsay); *id.* at 248:25–249:6 (sustaining defense objection to foundation and relevance); Trial Tr. Vol.
IV 625:23–626:6, ECF No. 83 (sustained defense objection regarding jury instructions).  The trial record does not
suggest that Judge Bruce's discretion significantly impacted the outcome of the trial.  *Cf. Williams*, 949 F.3d at 1064
(noting that "Judge Bruce equally granted and denied objections from both parties" at trial and that none of the
rulings against defendant "suggest[ed] that Judge Bruce's appearance of bias had any impact on the outcome of
Williams's trial").  Finally, Snyder highlights the life sentence on the § 924(c) count, Counseled 2255 Mot. 6, but
this was affirmed on appeal, *Snyder*, 865 F.3d at 501–02.

885, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless. It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard. *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."). "There is a difference between reversing an error on appeal and correcting the error years later." *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Here, Snyder has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice. His § 455(a) claim, therefore, would not warrant relief under § 2255 even if it were not untimely.

### C. Ineffective Assistance of Counsel

Snyder asserts that the FPD "provided him ineffective assistance of counsel" in violation of the Sixth Amendment in two ways. Counseled 2255 Mot. 26–27. First, he argues that the FPD "was ineffective for failing to include claims [based on Judge Bruce's *ex parte* communications] in direct appeals once the full scope of the . . . communications was revealed." *Id.* at 27. And second, he argues that the FPD was ineffective for failing to include him in a tolling agreement for actual bias claims and for failing to secure an agreement for appearance of

bias claims. *Id.* The Government argues that these claims are meritless for numerous reasons, "most notably because the FPD[] did not represent [Snyder] on appeal or at any time thereafter." Resp. 54–65.

The Court need not address most of the Government's arguments. With respect to the appeal claim, the Government is correct that the FPD did not represent Snyder on appeal, so it could not have provided him with ineffective assistance of counsel. And even if Snyder had meant to allege that his appellate attorney was ineffective for failing to raise claims based on Judge Bruce's communications on appeal, his appeal was resolved over a year before the emails became public. His counsel was not ineffective for failing to raise a claim based on facts of which he was not aware. With respect to the second claim, Snyder had no right to counsel beyond his appeal. *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *cf. Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)). Any deficient performance with respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

### D. Section 924(c) Claim

18 U.S.C. § 924(c)(1)(A)(ii) provides that "any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States," brandishes a firearm shall be sentenced to at least seven years of imprisonment. A term of imprisonment imposed under § 924(c) must be imposed consecutively to any other term of imprisonment imposed on the person. *Id.* § 924(c)(1)(D)(ii). Crime of violence "means an offense that is a felony and" either "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," *id.* § 924(c)(3)(A), or "that by its

nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," *id.* § 924(c)(3)(B).  In *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), the Supreme Court invalidated § 924(c)(3)(B), also referred to as the residual clause, as unconstitutionally vague.

In his Pro Se 2255 Motion, Snyder argues that his § 924(c) conviction should be vacated because the residual clause was invalidated in *Davis* and his Hobbs Act robbery conviction does not qualify as a crime of violence under § 924(c)(3)(A).  Pro Se 2255 Mot. 5.  He elaborates no further on his argument that Hobbs Act robbery does not constitute a crime of violence under § 924(c)(3)(A).  The Government argues that this claim is procedurally defaulted.  *See* Resp. 49 n.10.  Elsewhere, it argues that "Hobbs Act robbery continues to qualify as a predicate 'crime of violence' for 18 U.S.C. § 924(c)."  *Id.* at 42 n.8.

The Court agrees on both points.  Snyder argued in his motion to dismiss—filed pre-*Davis*—that Hobbs Act robbery was not a crime of violence under § 924(c)(3)(A) and that § 924(c)(3)(B) was unconstitutionally vague.  *E.g.*, Mot. Dismiss 5, 16–19.  Judge Bruce found that Hobbs Act robbery qualified as a crime of violence under § 924(c)(3)(A) and declined to address whether § 924(c)(3)(B) was unconstitutional.  Dec. 7, 2015 6–7 & n.2.  Snyder could have challenged this ruling on appeal but did not, *see Snyder*, 865 F.3d at 493, so he procedurally defaulted his claim that Hobbs Act robbery does not qualify as a crime of violence under § 924(c), *Norris v. United States*, 687 F.2d 899, 900 (7th Cir. 1992) ("Another issue raised in the appellant's section 2255 motion . . . could not properly be raised in a section 2255 motion because it could have been, but was not, raised on direct appeal.").

In any case, after Judge Bruce's ruling on the motion to dismiss, the Seventh Circuit held that Hobbs Act robbery was a predicate crime of violence under § 924(c)(3)(A).  *See United*

*States v. Anglin*, 846 F.3d 954, 965 (7th Cir. 2017), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 126 (mem.) (2017).  And it has reiterated this holding as recently as March 2023.  *See United States v. Worthen*, 60 F.4th 1066, 1068–69 (7th Cir. 2023).  So even if this claim were not procedurally defaulted, it would be meritless.

### III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Snyder has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

CONCLUSION

Accordingly, Defendant-Petitioner Kelton Snyder's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 97, and counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 100, are DENIED.  The counseled motion for a status conference, ECF No. 104, is MOOT in light of this Order.  The Clerk is directed to enter judgment and close the accompanying civil case, No. 2:20-cv-02133-SLD.

Entered this 29th day of September, 2023.

s/ Sara Darrow<br>SARA DARROW<br>CHIEF UNITED STATES DISTRICT JUDGE